IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA RECEIVED
Montgomery Division

2007 APR 26  P 1:03

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

ISABELL McQUEEN,

Plaintiff,

v.

CERTEGY PAYMENT RECOVERY
SERVICES, INC.

Defendant.

Civil Action No.

2:07CV353-WKW

DEMAND FOR
JURY TRIAL

## COMPLAINT

This action arises out of the efforts of the defendant, a business specializing in the collection of debts owed by persons who have written dishonored checks, to collect money from the plaintiff, Ms. Isabell McQueen, based on a series of returned checks which she did not write and for which she had no responsibility. As Ms. McQueen repeatedly advised the defendant, her checkbook containing the blank checks had been stolen from her home, and she had no involvement in presenting them or cashing them. Despite this, the defendant continued calling her at her home and pressuring her to make payments on these checks several times a week for a period of over one year.

Ms. McQueen alleges that these actions of the defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq*. She seeks her actual damages, statutory damages, and her costs and attorney's fees in this action.

## Jurisdiction and Venue

1. This Court has jurisdiction to hear the plaintiff's claims under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692 et seq., and specifically under 15 U.S.C. §1692k(d) and under 28 U.S.C. §1331.

2. This Court is authorized to hear the plaintiff's claims for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§2201-2202.

3. Venue is proper in the Middle District of Alabama because "a substantial part of the events or omissions giving rise to the claim occurred" in this district. 28 U.S.C. §1391(b).

## Parties

4. The plaintiff, Isabell McQueen, is a citizen of the State of Alabama and resides in the city of Montgomery, Alabama with her husband.

5. The defendant, Certegy Payment Recovery Services, Inc. (hereafter "Certegy") is a corporation which specializes in the business of collecting money from people who are alleged to owe it because they have written bad checks. Certegy was incorporated under the laws of the State of Georgia. It has its principal place of business in St. Petersburg, Florida, and it has offices in the State of Alabama.

## Statement of Facts

6. On May 14, 2004, a person or persons unknown broke into the home of the plaintiff, Ms. Isabell McQueen, and stole a number of items.

7. Among the items taken was a checkbook containing a number of blank checks.

8. The missing checks were checks issued by the Max Federal Credit Union in

Montgomery, Alabama for use by Ms. McQueen and her husband to draw money from a checking account at that Credit Union for various household purposes.

9. When they learned that someone had broken into their home, the McQueens immediately reported that fact to the Montgomery Police Department.

10. On the same day as they discovered that the checks had been stolen, the McQueens closed their checking account at the Credit Union.

11. In early December, 2005, Ms. McQueen received a number of dunning letters from defendant Certegy. Each letter advised her that one of her checks had been cashed during one of the four days of Thanksgiving weekend at a Montgomery store. Each letter stated that the check "was returned unpaid and has been referred to Certegy Payment Recovery Services, Inc. for collection." Each letter demanded payment from Ms. McQueen of the face amount of the check involved plus a $30 "check fee".

12. The letters from Certegy described at least eleven different checks.

13. According to the letters from Certegy, the total amount of the checks which had been written was over $2,800. With check fees, the total that Certegy demanded Ms. McQueen pay was over $3,100.

14. Ms. McQueen did not write, sign or cash any of the checks involved, and she did not know who the person or persons were who did write, sign and cash these checks.

15. Ms. McQueen does not know the circumstances which led to the checks being presented and cashed.

16. Ms. McQueen did not receive any of the money paid out for these checks.

17. After receiving the dunning letters from Certegy about the checks, Ms. McQueen contacted Certegy by telephone and explained the situation to the person she spoke with.

3

18. Despite the fact that Ms. McQueen explained to the person she spoke with at Certegy that she had not written the checks and that she did not have an obligation to make them good, she began to receive repeated telephone calls from agents and employees of Certegy during which they pressured Ms. McQueen to make the checks good.

19. During these telephone conversations, Ms. McQueen repeatedly explained what had happened, including the fact that the checks had been stolen, in blank, from her home roughly 18 months before they had been presented and cashed.

20. During these telephone conversations, Ms. McQueen repeatedly advised the persons calling on behalf of Certegy that she did not owe, and would not pay, the money requested.

21. During these telephone conversations, Ms. McQueen also specifically asked the people calling on behalf of Certegy to stop calling her about this matter.

22. Despite her requests, Certegy agents and employees continued to call Ms. McQueen to pressure her to pay off the dishonored checks.

23. Certegy agents and employees called Ms. McQueen to pressure her to pay off the dishonored checks several times each week during the period from December 2005 to January 2007.

24. In August 2006 and again in December 2006, Ms. McQueen sent to Certegy, by fax, a copy of the police report she and her husband had filed on the day of the burglary and a copy of a document showing that they had closed their checking account the same day.

25. Despite Ms. McQueen's efforts to explain the situation to Certegy's agents and employees, they continued to call her to ask her to make these checks good.

26. In January, 2007, Ms. McQueen's attorney, acting on her behalf, faxed to Certegy copies of the police report and the paper showing that the checking account had been closed.

27. Certegy's agents and employees continued to call Ms. McQueen about the checks after Ms. McQueen's attorney sent them the information showing that the checks had been stolen and the checking account closed more than 18 months before the checks were cashed.

28. On or about January 17, 2007, Ms. McQueen's attorney wrote to Certegy and complained about the telephone calls to Ms. McQueen, advised Certegy that it was in violation of the FDCPA in its actions, and asked it, among other things, to stop telephoning Ms. McQueen about these checks.

29. After receiving the letter from Ms. McQueen's attorney in January 2007, Certegy's agents and employees finally stopped calling her to demand payment for these checks.

30. Because of the actions of Certegy's agents and employees in continually calling Ms. McQueen to demand payment for the returned checks despite the fact that this was a debt she did not owe, Ms. McQueen suffered from emotional distress, shame, humiliation, anger, and a sense of helplessness and frustration.

### First Cause of Action:
### Declaratory Relief

The plaintiff repeats and re-alleges all the above allegations of fact as if fully set forth here.

31. As described above, since December 2005, defendant Certegy has asserted a claim against the plaintiff, Ms. Isabell McQueen, for payment of the amounts paid out for the returned checks.

32. Certegy continues to assert this claim against Ms. McQueen to the present day.

33. Ms. McQueen did not write any of the checks involved, she does not know the names of the person or persons who cashed the checks, and she did not receive any of the money paid

out for those checks.

34. There is an actual controversy between Ms. McQueen and Certegy as to whether Ms. McQueen has a legal obligation to pay the sums claimed.

35. This Court should enter a judgment pursuant to the provisions of the Declaratory Judgment Act, 28 U.S.C. §§2201-2202, declaring that Ms. McQueen does not in fact owe the sums claimed by Certegy.

### Second Cause of Action:
### Fair Debt Collection Practices Act

The plaintiff repeats and re-alleges all the above allegations of fact as if fully set forth here.

36. In its actions as described above, Certegy was a "debt collector" within the meaning of the FDCPA. 15 U.S.C. §1692(6).

37. With regard to her actions as described in this Complaint, the plaintiff, Isabell McQueen, was a "consumer" within the meaning of the FDCPA. 15 U.S.C. §1692a(3).

38. Certegy knew or should have known that the checks had been altered and forged and that Ms. McQueen had no obligation to pay the money claimed as due for the returned checks.

39. Despite the fact that Certegy knew or should have known that Ms. McQueen did not owe the money claimed as due for the returned checks, it engaged repeatedly in actions for a period of over a year to pressure Ms. McQueen to pay the sums claimed anyway.

40. Based on its actions as described in this Complaint, Certegy acted in violation of the provisions of the FDCPA in that it:

(a) Continued to communicate with Ms. McQueen to pressure her to pay for the dishonored checks after having been advised by her, in writing, on a number of occasions she

6

was not responsible for paying for these checks, in violation of 15 U.S.C. §1692c(c);

(b) Engaged in conduct the natural consequence of which was to harass, oppress and abuse Ms. McQueen in connection with the collection of a debt, in violation of 15 U.S.C. §1692d;

(c) Caused her telephone to ring and engaged her in telephone conversations repeatedly with the intent to annoy, abuse and harass her, in violation of 15 U.S.C. §1692d(5);

(d) Used false, deceptive and misleading representations or means in connection with the collection of a debt, in violation of 15 U.S.C. §1692e;

(e) Falsely represented the character, amount and legal status of a debt, in violation of 15 U.S.C. §1692e(2)(a);

(f) Communicated to a national check verification database information that it knew or should have known was false to the effect that Ms. McQueen had written a series of bad checks totaling several thousand dollars in face value, in violation of 15 U.S.C. §1692e(8); and

(g) Used false representations and deceptive means to collect or attempt to collect a debt, in violation of 15 U.S.C. §1692e(10).

41. Certegy's actions as described in this Complaint caused Ms. McQueen to suffer emotional distress, shame, humiliation, anger, and a sense of helplessness and frustration.

42. Because of its violations of the FDCPA, as described in this Complaint, Certegy is liable to Ms. McQueen for her actual damages, $1,000 in statutory damages, and her costs and attorney's fees in this action. 15 U.S.C. §1692k.

## Jury Trial Demanded

In accordance with Rule 38 of the Federal Rules of Civil Procedure, the plaintiff hereby demands a jury trial of the issues in this action.

## Prayer for Relief

WHEREFORE, the plaintiff, Isabell McQueen, by counsel, asks this Court to enter a judgment in her favor and against the defendant, Certegy Payment Recovery Services, Inc., awarding her:

(1) an amount sufficient to fully and fairly compensate her for her actual damages suffered as a result of its actions; and

(2) the amount of $1,000 representing statutory damages under the FDCPA, 15 U.S.C. §1692k; and

(3) her costs and attorney's fees in this action.

Ms. McQueen also asks this Court to award her such other and further relief as to this Court shall seem just and proper.

                                                Respectfully submitted,

                                                ISABELL McQUEEN
                                                Plaintiff
                                                By Counsel

*[signature: Edward M. Wayland]*

Edward M. Wayland, Esq.
AOC # WAY004
P.O. Box 17
Montgomery, AL   36101
(334) 834-9901
(334) 264-8742 (fax)
e-mail:  edwayland@yahoo.com

Counsel for Plaintiff

9